[No. 2342.]

GRIFFIN ET AL. v. KNOBLOCK.

1. **Contracts—Partnership.**

M. and K. agreed to locate certain mining claims, which they afterwards did with other associates. M. and other associates sold the claims, and M. accepted, as consideration for his and K.'s interests, a certificate for a certain number of shares in

a mining company, issued in M.'s name.  M. agreed to return this certificate and have two issued, one to each, for an equal number of shares.  This was not done, and M. afterwards sold the certificate.  During the time of the location and sale of the claims, M. was engaged in various mining and other business enterprises, and, frequently, during this time, told K. he should have a half-interest in all of his business undertakings.  K. contributed some money towards the mining and other schemes, but there was no promise on his part to pay any certain sum or part of the expense.  Held, that if the evidence established any contractual relation between M. and K., it was that of a general partnership in the various business interests, and K. was not the owner in severalty of any specific part of the partnership property, and could not maintain an action against the purchaser for half of the mining stock sold by M.

2.  Partnership—Accounting.

One partner cannot maintain an action against another for the recovery of a specific part of the partnership assets, but is entitled to an interest in all the partnership assets to be determined by an accounting.

3.  Partnership—Sales.

One partner has a right to sell assets of the copartnership, and another partner cannot question such sale, or recover the property sold.

4.  Contracts—Consideration.

A promise by one, to whom a certificate of capital stock in a mining company was issued, to return such certificate and have two certificates issued in lieu thereof, one to himself and one to another party, without the payment of or promise to pay any consideration therefor by such other party, will not support an action against a subsequent purchaser of the certificate and the mining company, to require a transfer of half the shares represented by the certificate to said other party.

*Appeal from the District Court of Summit County.*

Mr. A. B. SEAMAN and Mr. H. S. SILVERSTEIN, for appellants (Mr. JOHN C. GAGE, of counsel).

Messrs. FILLIUS & DAVIS, for appellee.

GUNTER, J.

The gist of the allegations of the complaint is

that certain placer mining claims were conveyed to appellant company; that as part consideration therefor a certificate for 150,000 shares of the capital stock thereof was issued to one Miller, he taking the same under an agreement between appellee and himself that it should be owned by them equally; that soon after the issuance of the certificate—that is, about February, 1898—it was agreed between Miller and appellee that the certificate should be surrendered and reissued as two certificates, one to Miller and one to appellee, each for 75,000 shares of stock; that said certificate was not surrendered by Miller for reissuance, nor reissued as agreed; that appellee thereafter notified appellant company and appellant Griffin that he was the owner of one-half of the shares of stock evidenced by the certificate, and demanded the issuance to him of a certificate for 75,000 shares of said stock; that thereafter Griffin pretended to purchase the certificate for 150,000 shares of Miller, and had a transfer thereof made to himself; that Griffin now claims to own the same, and appellant company denies that appellee has any interest therein, and refuses to issue to him a certificate for the 75,000 shares. A decree is prayed declaring that Griffin has no interest in the 75,000 shares; that appellee is the owner thereof, and for an order requiring appellant company to issue to appellee a certificate for 75,000 shares. From a decree as prayed, the case is here.

If appellee had no cause of action of the nature pleaded against Miller, he has none against the transferee of the stock, appellant Griffin, nor against appellant company.

If a cause of action existed against Miller, it was through the alleged agreement between him and appellee made before the issuance of the certificate, or through the alleged agreement of February, 1898,

made after the issuance of the certificate to Miller.

The facts are: February, 1896, it was agreed between Miller and appellee that at a convenient time they would locate certain placer mining claims on Blue River, Summit county, this state. May, 1896, Miller, appellee, and other associates made locations of placer claims on said stream, and secured options on certain other locations. These parties developed to some extent such claims, and made repeated efforts to effect a sale thereof. Money and time were expended in such undertakings, the amount of which the evidence does not reveal. July, 1897, Miller, with certain associates, gave an option to purchase on the interests acquired through the locations and the options to appellant Griffin. This option resulted in the formation, November, 1897, of appellant corporation, and the conveyance to it soon thereafter— about February, 1898—of said mining interests, and, in consideration of the transfer by said conveyance of Miller's interest in said claims, and of whatever interest appellee had therein, there was issued to Miller a certificate for 150,000 shares of the capital stock of appellant company.

From February, 1896—the inception of the business association between Miller and appellee—to February, 1898—the date of the issuance of the certificate for 150,000 shares of stock—Miller had been interested in various mining enterprises and other business ventures. From time to time during this period he informed appellee that he should have an equal interest with him in all of his business undertakings. May 25, 1896, he wrote appellee, "You can have one-half of all my interest in the peak or elsewhere," meaning by "interest in the peak," certain mining interests which Miller claimed to have at Hahn's Peak. On same date, in a letter in reference to Willow Canon mining claims, Oro Cache mining

claims and certain other mining interests and town-lot interests, all being different ventures from the claims upon Blue River, he says, "Will just pull together the best we can, and divide the cake between us." June 11, 1896, he writes of certain mining properties in which he and appellee are interested, and of a general merchandise store which he and Foster were locating at Dillon, and says, "You know that in whatever I do you share In whatever you do I want a share."

The substance of Miller's statements, by his letters and otherwise, from February, 1896, to February, 1898, is, that appellee shall have one-half of everything that he has or expects to have, but the evidence reveals no promise at any time made by appellee; the promises are all by Miller. During this period Miller had been engaged, as stated, in various mining enterprises and other business ventures. He had become interested in the Willow Canon mining claims, the Oro Cache mining claims, mining claims at Hahn's Peak, mining claims in Wyoming, and certain other business ventures, as the above mentioned general merchandise store, and also an investment brokerage business. All of these undertakings were within the broad terms of Miller's promise that he would divide everything in which he was interested with appellee. As stated above, appellee made no promises in return. There is no evidence of the terms upon which he was to share in these various enterprises. He contributed, however, to the various undertakings of Miller about $1,000.00, in money and services. How much to any one enterprise appellee could not say, except that of this contribution about $60.00 in cash, and $250.00 in stenographic services, went into the Blue River mining claims. Whether appellee agreed to contribute more than $1,000.00 to the general

ventures, or more than $310.00 to this particular undertaking, the evidence does not inform us. That considerable money and labor must have been contributed by Miller to these various undertakings appears from the evidence, but how much by him does not appear. If the evidence establishes any contractual relation between Miller and appellee, it is that of a general partnership in these various business ventures. We do not hold that it does this, but if we assume that it does, appellant is not the owner in severalty of any specific part of any particular property of the copartnership as this 150,000 shares of stock, but he has an interest in the copartnership assets determined by an accounting. This is not an action for an accounting, but an action to compel a transfer to appellee of a particular asset of the copartnership. If a cause of action exists, it is not within the pleadings; further, there is no evidence here upon which an accounting could be had. From the evidence before us it is impossible to say how stands the account between Miller and appellee. Again, if the certificate for 150,000 shares was an asset of the copartnership, one of the partners, Miller, had the right to sell it, and his sale to Griffin cannot be questioned by the other partner, appellee.

Shortly after the issuance to Miller of the certificate in 1898, he told appellee that he would have it canceled and reissued, a certificate to himself and one to appellee. This was never done. Shortly after the issuance of the certificate for 150,000 shares to Miller, it was pledged to secure two notes given by him. Later Griffin took an assignment of these notes and of the certificate, and later purchased of Miller for $1,000.00 his right to redeem the certificate from the hypothecation. The stock was later reissued, one-third thereof to Griffin, the remainder thereof to other parties. The promise of Miller of February,

1898, to surrender the certificate and have it reissued as two new certificates, one to appellee, one to himself, will not sustain this action, because it was made without consideration.  The promise was simply a statement by Miller to appellee, unsupported by any change in the situation of the parties or by any consideration whatever.  A cause of action has not been proven on the promise alleged to have been made before the issuance of the certificate for 150,000 shares, nor upon the promise alleged to have been made thereafter.

Judgment reversed.                         *Reversed.*